STEPHEN H. JACOBS *v.* HOLDEN LEONARD CO., INC., ET AL.

January Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed February 7, 1939.

*George O. Hanford* for the claimant.

*J. Boone Wilson, Charles F. Black* and *Willsie E. Brisbin* for the employer and insurance carrier.

BUTTLES, J. On September. 22, 1937, the plaintiff, claimant in the proceedings below, was injured by accident arising out of and in the course of his employment by the defendant Holden Leonard Co., Inc., and as a result suffered the loss by amputation of the little and ring fingers and total loss of use of the second finger of his left hand. Claim for compensation having been made and hearing duly had the commissioner of industries awarded compensation for a period of forty-five weeks for the permanent . injury, this result being reached by adding the period of compensation provided by the schedule in P. L. 6527 for loss of each of the three fingers involved. The commissioner also found that as a result of the loss of these fingers the plaintiff had suffered a loss of fifty-four per cent of the usefulness of the hand, for which compensation would have been awardable for 75.6 weeks if computed on the basis of proportionate hand injury.

From the commissioner's award the plaintiff has appealed, under the statute, to this Court. More than two pages of the printed case are used to state, under seven numbered paragraphs, the questions of law upon which review by this Court is desired. Apparently all this can be reduced to one question of law, which is whether the commissioner, in making the award, correctly applied the law to the facts found; or perhaps, more broadly stated, to what award is the plaintiff entitled under the law, by reason of the facts found.

Separately numbered subdivisions of P. L. 6527 provide that the compensation period for loss of a thumb shall be forty weeks; for loss of a first finger ·twenty-five weeks; of a second finger twenty weeks; of a third finger fifteen weeks and of a fourth or little finger ten weeks. Subdivision IV of the same

section provides for "The loss by separation of one hand at or above the wrist joint, or the permanent and complete loss of the use of one hand, one hundred and forty weeks. *The loss of the thumb and all four fingers of the hand shall be considered equal to the loss of the entire hand.*" Italics are ours, that sentence being a later amendment of the original section. So much of Subdivision XII as is material to our inquiry here reads thus: "* * * * but in no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand." Subdivision XVIII provides that: "In all other cases in this class, or where the usefulness of a member or any physical function is permanently impaired, the compensation shall bear such relation to the amounts stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule."

The question here presented is a new one in this jurisdiction. Of course the decisions of courts in other jurisdictions in construing similar provisions are valuable as aids in construing our own act so far as those decisions are applicable thereto, but, as was said in *Kelly's Dependents* v. *Hoosac Lumber Co. et al.*, 95 Vt. 50, 53, 113 Atl. 818, 820, "the value of precedents is somewhat uncertain. A slight difference in the wording of the statutes or some small variation in the circumstances may impair the value of an outside decision when attempt is made to apply it here." Perhaps there are no provisions of the workmen's compensation law with respect to which greater care should be used in applying decisions of other courts than with respect to compensation for permanent partial disabilities under the various schedules of injuries.

The suggested uniform compensation law which was proposed by the Commissioners on Uniform State Laws following their conference of October, 1914, was a mere outline or framework. The suggested schedule of injuries contained only five items and the periods of compensation were left blank in each instance, to be filled in by each state as it might see fit. See Proceedings of the Twenty-fourth Annual Conference of Commissioners on Uniform State Laws, pp. 313 and 314. In Vermont this schedule has now been expanded to twenty-one items or subdivisions. In other jurisdictions there has been a similar expansion, with a very considerable amount of diversity as the re-

sult. Under the law of at least two states we understand that the age of the claimant is a factor which must be considered in awarding compensation under the schedule, and in at least one state it appears that the award is made to vary with the occupation of the injured person. The method of computing compensation varies considerably in other respects in the various schedules. In some states the compensation payable under the schedule is exclusive, while in others an award is also made for temporary total disability. In some states the total obtained by adding the scheduled compensation for each of the five digits exceeds that provided for loss of the hand, while in Vermont and some other states this total is less than that given for loss of the hand. The law in some states, at least as originally enacted, contained no "other cases clause" by which compensation could be awarded for loss of a member or of a function not scheduled, nor was provision made for partial loss of a member or of function of a member.

The majority of the cases which have passed upon the question here raised have held that compensation for multiple finger and thumb injuries should be computed by adding the amounts awarded for the separate digits and not by finding the proportion of total hand loss sustained. We think, however, that a study of these cases and of the statutes upon which they were based indicates that at least in a majority of them there were reasons for such holding which do not exist under our law, and furthermore that under our law there are reasons for sustaining the other method which do not obtain under the laws of the states which have upheld the addition method. Under our law the total obtained by adding the compensation given for the five digits is 110 weeks. Compensation for loss of the hand is 140 weeks. But subd. IV as stated above provides that the loss of the thumb and all four fingers shall be equal to loss of the hand. The result is that the compensation for loss of the five digits would be 140 weeks, but for loss of all except the little finger the compensation would be only 100 weeks, so that if the little finger also were amputated the compensation would be increased forty weeks instead of ten weeks, which is the scheduled value of that finger. More important is the fact that if we are confined to the addition method in computing compensation for multiple finger injuries, the second clause of subd. XII can have

no meaning, since by that method the amount awarded for more than one finger could not possibly, in any case, exceed the scheduled compensation for loss of hand, and except in case of loss of all fingers and thumb such compensation must always be materially less than for loss of hand.

The defendants admit that their theory renders this provision of subd. XII meaningless and resort to the ingenious argument that the drafters of our compensation law naively copied subd. XII, into our act from earlier laws without realizing that the second clause thereof was without meaning in our act because the schedule in our act, unlike the schedules in those earlier acts, provided a compensation for loss of hand which is greater than the aggregate for loss of thumb and all four fingers. This is a rather violent assumption and one which we deem it unnecessary to make in this case. It is a well recognized rule of statutory construction that effect must be given to all the provisions of a statute if possible. In an earlier compensation case it was said: ''We should not give the act a construction that would nullify any of its provisions unless compelled to do so.'' *Petraska* v. *Nat. Acme Co.*, 95 Vt. 76, 79, 113 Atl. 536, 538. See, also, *Cole* v. *Walsh et al.*, 97 Vt. 256, 260, 122 Atl. 664; *State* v. *Rutland R. R. Co.*, 81 Vt. 508, 514, 71 Atl. 197.

We have not thought it necessary to make a detailed examination of the workmen's compensation statutes of all the states, numbering more than forty, which have such legislation. We find, however, that under the schedules in the laws of the following states the aggregate of compensation for loss of thumb and each of the four fingers exceeds the compensation given for loss of a hand, viz.: Alabama, Indiana, Maine, Michigan, Minnesota, New Jersey and Texas. All of these except Maine are states upon the decisions of whose courts the defendants rely. Obviously the defendants are correct in asserting that under such a schedule the use of the addition method of computation does not destroy the intent and meaning of a provision similar to our subd. XII, or render it in the least degree obscure. Furthermore, such a schedule tends to minimize any injustice which may result in using the addition method from the fact, if it be a fact, that the loss of two adjoining fingers must necessarily be something more than the sum of the loss of each finger separately.

The defendants rely quite strongly upon *Gramici* v. *Zinn*,

219 N. Y. 322, 114 N. E. 397. Here the claimant lost the first, second and third fingers, and the first phalange of the fourth finger. At that time the New York law contained no provision for proportionate award for partial loss of the hand, so that the court was confronted with the necessity of, awarding for total loss of hand or else for the sum of the individual awards for the separate fingers. The court chose the latter alternative and awarded 108½ weeks obtained by the addition method. Shortly thereafter the New York law was amended to provide that where the injury results in the loss of more than one finger compensation may be awarded for the proportionate loss of use of the hand thereby occasioned, provided, however, that in no case shall the compensation awarded for more than one finger exceed the amount provided for the loss of the hand.

In *Lovalo* v. *Michigan Stamping Co.*, 202 Mich. 85, 167 N. W. 904, 905, the court was confronted with a somewhat similar situation. The Michigan law at that time apparently contained no provision for partial loss of the hand. The claimant lost substantially all of his right hand except the thumb. It was contended that the award should be 100 weeks for loss of four fingers, but the court sustained an award below for 150 weeks for entire loss of hand. In this case the court said: "If the claimed strict construction urged by the defendants is accepted, in no case could the amount awarded for more than one finger exceed in the aggregate 100 weeks and the provision last quoted plainly recognizing a permissible increased discretionary limit of more than one finger to 150 weeks is meaningless. It is a cardinal rule of construction that a meaning shall be given to all parts of a statute where possible." The quoted provision of the Michigan statute referred to is similar to subd. XII of Sec. 6527 of the Vermont law. The court further said: "The only indicated meaning or purpose of that proviso is to give the board discretionary power to extend the period of weekly compensation within the limit specified, and such we conclude was the fairly manifest legislative intent." This is probably *obiter* since there was here a loss of most of the metacarpus as well as of the fingers. Nevertheless the language is quite significant.

In *North Beck Mining Co.* v. *Indust. Comm.*, 58 Utah, 486, 200 Pac. 111, 113, there was loss by amputation of the first three

fingers of the right hand at the proximal joint and removal of a chip from the head of the metacarpal bone of the index finger. The little finger was amputated at the junction of the second and third phalanges. The thumb was not injured and was capable of junction with the palm of the hand and with the stump of the little finger. It should be noted that under the Utah law, like that of Vermont, the scheduled compensation for loss of hand is greater than the sum of the amounts given under the schedule for the thumb and the four fingers separately. The defendant contended that award could only be made by the addition method, and that the provision of their statute similar to our subd. XVIII was applicable only in cases where there had been a loss of some portion of the palm of the hand and not where there had been a loss of fingers only. The court, however, sustained an award for fifty per cent loss of the hand and expressly approved the decision of the majority of the commission that where several fingers are lost it is the loss of a bodily function not otherwise provided for in the schedule.

We quote as follows from the opinion in this case, with which we are in agreement. ''It is a matter of common knowledge that if one finger on a hand is amputated the adjoining fingers begin to function for the missing member, and soon acquire the power, to a great extent, of taking the place of the lost finger. It follows that the loss of two adjoining fingers must necessarily be something more than the sum of the loss of each finger separately. * * * * But it would not be fair, and we do not think it was intended by the statute as amended in 1919 to compensate for the loss of all the fingers by adding the scheduled benefits for the loss of each finger. In 1919 the law was amended by adding to the schedule for specific losses this provision: 'Any other disfigurement, or loss of bodily function not otherwise provided for herein, such period of compensation as the commission shall deem equitable and in proportion to compensation in other cases, not exceeding 200 weeks.' It seems plain and clear to us that this amendment was adopted for the express purpose of providing fair and adequate compensation in cases like the one before us.''

We see nothing incongruous in construing the words ''other cases in this class'' as contained in our subd. XVIII to include the loss of two fingers, or of three fingers, or of four fingers. If

the Legislature had any intent in the enactment of the second part of subd. XII it clearly was that such injuries should be considered other cases in this class. That the Legislature did intend this provision to have a meaning and that such meaning was what we have indicated is borne out by the fact that two years after the enactment of subdivisions XII and XVIII the Legislature enacted the second sentence of subd. IV definitely providing for the compensation to be awarded in one such "other case," viz., the loss of the thumb and all four fingers.

We think it unnecessary to consider the suggestion made by the defendants that the addition method of computation will result in less delay, expense and inconvenience in administering the law than will the method of determining proportionate loss. We are here concerned with the correct administration of the law as it exists rather than with some slight increase or decrease in expense, time consumed or inconvenience to the parties. However, the fact is that only a small proportion of the cases coming before the commissioner involve payment of compensation for scheduled injuries. It is also true that only a small proportion of the questions presented to him can be settled by application of a mathematical formula. Cases involving the exercise of discretion and judgment are adjusted daily either by informal conference of the parties with the commissioner or by agreements approved by him. We know of no reason why cases involving loss of fingers cannot, almost always, be adjusted with equal facility.

We hold that in the present case compensation should be awarded under the provisions of subdivision XVIII of P. L. 6527 and not by addition of the separate awards given for the thumb and fingers individually.

It should be noted, however, that subd. XVIII contemplates an award which shall be proportionate to the amounts stated in the schedule. This means, we think, as applied to this case, proportionate to any amounts stated in the schedule which have a bearing on the determination of the present question.

Subdivision IV gives thirty weeks compensation for loss of all fingers and thumb in addition to the 110 weeks which would be the result of adding the compensation for the several digits. We think it is the intent of subd. XII that some portion of this thirty weeks shall be allocated to any loss of more than

one finger, the exact proportion for various multiple finger losses to be determined, but within the limitation that such extra compensation for the loss of all five digits shall be thirty weeks. It is obvious that the suggested award of 75.6 weeks for the second, third and fourth fingers is not in line with this intent, since it absorbs a trifle more than the whole thirty weeks of additional compensation, leaving no part thereof available in the event of the subsequent loss of both the thumb and forefinger. We think that the commissioner's finding of proportionate loss of hand and suggested compensation produced thereby might well be slightly reduced so as to be more in harmony with subdivisions IV and XII as well as with the provisions for loss of hand or a portion thereof.

*Order vacated, award set aside with costs to the plaintiff in this court, and case remanded to the commissioner of industries for further proceedings in accordance with the views herein announced. To be certified to the commissioner of industries.*